Ronald L. Richman, SBN 139189
Susan J. Olson, SBN 152467
BULLIVANT HOUSER BAILEY PC
235 Pine Street, Suite 1500
San Francisco, California  94104-2752
Telephone: 415.352.2700
Facsimile: 415.352.2701
E-Mail:  ron.richman@bullivant.com
             susan.olson@bullivant.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; and BOARD OF TRUSTEES OF THE LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>Plaintiffs,<br><br>vs.<br><br>BRENEMAN, INC., a California corporation; and JAMES G. BRENEMAN, an individual,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT, TO RECOVER UNPAID TRUST FUND CONTRIBUTIONS, FOR BREACH OF CONTRACT/PAYMENT PLAN AND FOR A MANDATORY INJUNCTION**<br><br>**[29 U.S.C. §185(a); 29 U.S.C. §§1109, 1132(g)(2), 114; 28 U.S.C. § 1367(a)]** |

Now comes the Plaintiffs, hereinabove named, and for their causes of action against

Defendants, allege as follows:

## I. <u>JURISDICTION AND VENUE</u>

1.      This is an action for damages for breach of the collective bargaining agreement

described below, for recovery of unpaid trust fund contributions and for injunctive relief.  This

Court has jurisdiction of the action under and pursuant to the provisions of 29 U.S.C. § 185

(§ 301 of the Labor Management Relations Act of 1947, as amended) and 29 U.S.C.

§§ 1132(a)(3) and 1132(e)(1) (§§ 502(a)(3) and 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended)("ERISA").  The suit arises from the defendants' failure to make trust fund contributions as required by the collective bargaining agreement, by the written trust agreements and by provisions of federal law.  This is a further action for damages for breach of contract/payment plan and personal guaranty, arising out of the same transaction, defendants' obligation to pay its trust fund contribution.  This court has supplemental jurisdiction over the breach of contract/payment plan and personal guaranty cause of action under 28 U.S.C. § 1367(a).

2.       Venue of the within action is properly laid in the U.S. District Court for the Northern District of California in that, under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), contributions are made to, and benefits are paid from, a corporate co-trustee bank in the Northern District of California.

## II. <u>PARTIES</u>

3.       The Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California are the Plaintiffs herein.  The Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California (the "Trust Funds") are trust funds organized under and pursuant to the provisions of §§ 302(c)(5) and 302(c)(6) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §§ 186(c)(5) and 186(c)(6).  The Trust Funds were established through collective bargaining agreements between the Northern California District Council of Laborers and employer associations representing construction industry employers doing business in Northern California.  The Trust Funds are employee benefit plans created by written trust agreements subject to and pursuant to §§ 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37).  The Boards of Trustees, as fiduciaries, are the plaintiffs, who sue on behalf of the Trust Funds.

/ / /

4.    Each of the Trust Funds is a third party beneficiary of the collective bargaining agreement described below.

5.    At all times mentioned herein, each of the Trust Funds was an express trust created by a written trust agreement subject to and pursuant to § 302 of the Labor Management Relations Act, 29 U.S.C.§ 186, and a multi-employer benefit plan within the meaning of sections 3 and 4 of ERISA, 29 U.S.C. §§ 1002, 1003.

6.    The Trust Funds provide a variety of benefits for laborers, retired laborers and other related covered employees on whose behalf contributions are made pursuant to collective bargaining agreements.  The duties of the Board of Trustees of the Trust Funds include ensuring that employers who are signatories to said collective bargaining agreements comply with the terms of those agreements with respect to payments and contributions to the Trust Funds.

7.    Plaintiffs are informed and believe, and upon that ground allege, that at all times material hereto, defendant Breneman, Inc. was and is a California corporation with its principal place of business located in Walnut Creek, California.  Plaintiffs are further informed and believe, and upon that ground allege, that Breneman, Inc. is and has been an employer within the meaning of Section 3(5) and Section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145 and an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.  Plaintiffs are informed and believe, and upon that ground allege, that at all relevant times, defendant James G. Breneman was and is the RMO/CEO/PRES of Breneman, Inc. and operated and controlled Breneman, Inc. and that defendant James G. Breneman acted directly or indirectly in the interest of Breneman, Inc. with respect to plaintiffs' employee benefit plans.  Plaintiffs are informed and believe, and upon that ground allege, that at all times material hereto, James G. Breneman maintained a residence in the city of Walnut Creek, California.  Plaintiffs are informed and believe, and on that ground allege, that at all relevant times, defendants constituted a single employer.

/ / /

/ / /

/ / /

### III. <u>FIRST CLAIM FOR RELIEF</u>

**(Breach of Collective Bargaining Agreement)**

**(Breneman, Inc.)**

8.     Plaintiffs reallege and incorporate by reference, as though fully set forth, the allegations contained in paragraphs 1 - 7 of this Complaint.

9.     On or about March 4, 2014, defendant Breneman, Inc. executed a Memorandum Agreement with the Northern California District Council of Laborers.  By virtue of its execution of the Memorandum Agreement, Breneman, Inc. became bound to a written collective bargaining agreement with the Northern California District Council of Laborers ("Laborers Union") entitled the Laborers' Master Agreement For Northern California ("Master Agreement").  In agreeing to be bound to the Master Agreement, defendant agreed to be subject to and bound by all provisions and conditions of the written Trust Agreements which established the trust funds.  Pursuant to the provisions of the Master Agreement, defendant agreed to be bound by all terms relating to wages, hours and conditions of employment prescribed therein with the Laborers Union.

10.     By virtue of the Master Agreement and written trust agreements, defendant promised and agreed that:  (1) it would pay employee fringe benefit contributions into each Trust Fund in regular monthly installments commencing on or before the 15th day of the month immediately succeeding the month in which the employee's work was performed; (2) that in the event that any of said monthly installments were not paid in full on or before the 25th day of the month in which such contributions became due, it would pay interest on the delinquent contribution in the amount of 1.5% per month until paid in full, and would also pay the amount of $150 for each delinquent contribution as liquidated damages, and not as a penalty; and (3) that if any suit with respect to any of said contributions or payments were filed against them, it would pay into said Trust Funds the attorneys' fees, costs and all other expenses incurred in connection with such suit.

11.     The Master Agreement between the Laborers Union and Breneman, Inc. has never been terminated.

12.    Plaintiffs have performed all conditions, covenants and promises on their part to be performed in accordance with the terms and conditions of the Master Agreement and Trust Agreements.

13.    Within four years last past, defendant materially breached and broke the aforesaid Master Agreement and trust agreements in the following respects:

       a.    by reporting, but failing to pay (reported, not paid) all employee fringe benefit contributions on behalf of their covered employees for the period November – December 2015 and January – February 2016 in the principal amount of $38,257.12, according to proof at trial;

       b.    by failing to pay interest and liquidated damages on the unpaid and delinquent employee fringe benefit contributions (reported, not paid), for the period November – December 2015 and January – February 2016 in an amount to be proven at trial;

       c.    by failing to pay interest and liquidated damages on contributions paid, but paid late, for the period March, August – December 2012; January – December 2013; January – September 2014 and January – February 2015, in the amount of $31,033.79, as of March 24, 2016.

14.    The aforesaid material breaches proximately caused damages to plaintiffs in the following approximate amounts, all according to proof at trial:  (a) for unpaid contributions (reported, not paid) in the principal amount of $38,257.12 plus interest and liquidated damages in an amount to be proven at trial; and (b) interest and liquidated damages on contributions paid, but paid late, in the amount of $31,033.79, as of March 24, 2016.  Interest will continue to accrue at the rate of 1.5% each month during the pendency of this lawsuit.

15.    Plaintiffs have incurred and will continue to incur attorneys' fees in the within action.  Pursuant to the provisions of the Master Agreement and the trust agreements, plaintiffs request that the Court award plaintiffs their attorneys' fees and costs incurred in the bringing of the within action.

WHEREFORE, plaintiffs pray for judgment as set forth below.

– 5 –

COMPLAINT FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT

1

### IV. SECOND CLAIM FOR RELIEF

2

**(Recovery of Unpaid Trust Fund Contributions)**

3

**(ERISA §§ 502(g)(2), 515)**

4

**(Breneman, Inc.)**

5   16.   Plaintiffs reallege and incorporate by reference, as though fully set forth, the

6   allegations contained in paragraphs 1 - 15 of this Complaint.

7   17.   ERISA Section 515, 29 U.S.C. § 1145, requires defendant to make such

8   contributions to the plaintiffs Trust Funds as are required under the terms of its collective

9   bargaining agreement with the Union.   Pursuant to the provisions of their trust agreements,

10   plaintiffs are entitled to enforce defendant's obligations to make those contributions.

11   18.   Plaintiffs are informed and believe, and on that ground allege, that defendant

12   reported, but failed to pay (reported, not paid) all employee fringe benefit contributions into

13   each Trust Fund for the period November – December 2015 and January – February 2016 in the

14   principal amount of $38,257.12, according to proof at trial.   Defendant is further obligated by

15   the provisions of the Master Agreement and the Trust Agreements to pay interest on unpaid

16   contributions at the rate of 1.5% per month until paid and liquidated damages in the amount of

17   $150 for each month that defendant failed to timely report and pay all employee fringe benefit

18   contributions into each Trust Fund.

19   19.   Pursuant to the provisions of ERISA, Section 502(g)(2), 29 U.S.C. § 1132(g)(2),

20   plaintiffs are entitled to the following statutory relief:

21   (a)   Section 502(g)(2)(B):  for contributions reported and not paid, an award of

22   interest on the unpaid fringe benefit contributions at the rate of 1.5% per

23   month, from the date of the delinquency, until the date of judgment,

24   calculated to be $1,158.79 through March 24, 2016; and

25   (b)   Section 502(g)(2)(C):  the additional award of an amount equal to the greater

26   of (i) interest on the unpaid fringe benefit contributions at the rate of 1.5%

27   per month, from the date of the delinquency, until the date of judgment or;

28   (ii) liquidated damages under the Master Agreement and trust agreements of

– 6 –

1                 $150 for each month that defendant reported, but failed to pay all employee

2                 fringe benefit contributions into each Trust Fund, calculated to be $1,158.79

3                 through March 24, 2016.

4        20.       Plaintiffs have incurred and will continue to incur attorneys' fees in the within

5 action.  Pursuant to the provisions of Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D),

6 plaintiffs request that the Court award plaintiffs their attorneys' fees and costs incurred in the

7 bringing of the within action.

8        WHEREFORE, plaintiffs pray for judgment as set forth below.

9               **V. <u>THIRD CLAIM FOR RELIEF</u>**

10               **(Breach of Contract/Payment Plan)**

11               **(28 U.S.C. § 1367(a))**

12               **(Breneman Inc. and James G. Breneman)**

13        21.       Plaintiffs reallege and incorporate by reference, as though fully set forth, the

14 allegations contained in paragraphs 1 - 20 of this Complaint.

15        22.       As a related transaction to the ERISA claim, identified above, and in conjunction

16 with Breneman, Inc.'s duty to pay trust fund contributions on behalf of its covered employees,

17 Breneman, Inc. entered into a Payment Plan to pay to plaintiffs trust fund contributions for the

18 period June, September – November 2014; and March – May 2015, in the principal amount of

19 $206,936.33 plus liquidated damages and interest, which would be determined in the event of a

20 default because the liquidated damages and interest calculation will change as progress

21 payments are being made.  A true and correct copy of the Payment Plan is attached hereto as

22 <u>Exhibit A</u>.  Monthly installment payments of $17,245 were to be made as against the underlying

23 contributions due and owing, $206,936.33, starting August 20, 2015 through July 20, 2016.  If

24 defendants made all payments on time, plaintiffs had the option to reduce or waive the

25 liquidated damages or interest.  If payments were not timely made, the entire remaining balance

26 of contributions, liquidated damages and interest becomes immediately due and payable.

27        23.       In conjunction with the Payment Plan, defendant James G. Breneman executed a

28 Personal Guarantee and Undertaking ("Personal Guarantee"), wherein he agreed to become

1  personally liable for the debt in the Payment Plan should there be a default of the Payment Plan.

2  A true and correct copy of the Personal Guarantee and Undertaking is attached hereto as

3  Exhibit B.

4      24.   Plaintiffs have performed all conditions, covenants and promises on their part to

5  be performed in accordance with the terms and conditions of the Payment Plan and Personal

6  Guarantee and Undertaking.

7      25.   Within the four years last past, defendants materially breached and broke the

8  Payment Plan in the following respects.  Defendants paid the first five monthly installments of

9  $17,245, totaling $86,225, leaving a balance due of $120,711.33, on the underlying

10  contributions.  After the default, liquidated damages and interest were calculated.  Liquidated

11  damages amount to $750 and interest amounts to $28,448.41, for a total balance of $29,198.41.

12  The total remaining balance due and owing under the Payment Plan is $120,711.33 +

13  $29,198.41 = $149,909.74.  Despite demand, defendants have failed and refused to pay this

14  remaining balance, or any portion of this remaining balance, and the same is due, owing and

15  payable.

16      26.   The aforesaid material breaches proximately caused damages to plaintiffs in the

17  following approximate amount, all according to proof at trial:  unpaid contributions, liquidated

18  damages and interest in the amount of $149,909.74, according to proof at trial.  Interest will

19  continue to accrue at the rate of 10% per annum.

20      27.   Plaintiffs have incurred and will continue to incur attorneys' fees in the within

21  action.  Pursuant to the provisions of the Master Agreement and the trust agreements, plaintiffs

22  request that the Court award plaintiffs their attorneys' fees and costs incurred in the bringing of

23  the within action.

24      WHEREFORE, plaintiffs pray for judgment as set forth below.

25  / / /

26  / / /

27  / / /

28  / / /

COMPLAINT FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT

## VI. <u>FOURTH CLAIM FOR RELIEF</u>

### (Mandatory Injunction)

### (ERISA § 502(g)(2)(E))

### (Breneman, Inc.)

28.     Plaintiffs reallege and incorporate by reference, as though fully set forth, the allegations contained in paragraphs 1 – 27 of this Complaint.

29.     Pursuant to the terms and conditions of the Master Agreement and Trust Agreements, defendant Breneman, Inc. is required to allow the Trust Funds access to its books and records to determine the amount of trust fund contributions due and owing.  Plaintiffs have, as one of their purposes, the obligation to ensure that contributions required to be made to the Trust Funds are fully and correctly made.  The purposes of the respective funds are to provide health and welfare, vacation, pension and other benefits for laborers, retired laborers and other related covered employees on whose behalf contributions are made, which benefits are supported by such contributions, and to ensure that employers who are signatories to the collective bargaining agreement referred to herein comply with the terms of the agreement with respect to the payment of contributions to the Trust Funds.

30.     Pursuant to ERISA Section 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E), the Court may award such other legal or equitable relief as the Court deems appropriate, and pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), plaintiffs are entitled to obtain appropriate equitable relief for the breaches alleged herein.  Plaintiffs seek a mandatory injunctive order of this Court ordering and requiring defendant Breneman, Inc. to permit plaintiffs' auditor access to the books and records of defendant Breneman, Inc. in order to permit plaintiffs to verify the precise amounts owed by defendants to the Trust Funds.

31.     Plaintiffs seek a mandatory injunctive order from this Court because plaintiffs have no adequate legal remedy in that an audit of the books and records of defendant Breneman, Inc. is the only means to accurately verify the additional amounts owed by defendants to the Trust Funds.

WHEREFORE, plaintiffs pray for judgment as follows.

## VII. **RELIEF REQUESTED**

1.      On the First Claim for Relief, for damages for breach of the collective bargaining agreement for judgment against defendant Breneman, Inc. as follows:  (a) for unpaid contributions (reported, not paid) in the principal amount of $38,257.12 plus interest and liquidated damages in an amount to be proven at trial; (b) interest and liquidated damages on contributions paid, but paid late, in the amount of $31,033.79, as of March 24, 2016, according to proof at trial and (c) for such other or further amounts as may be shown at trial and as may be discovered after plaintiffs have had the opportunity to conduct an audit of defendant Breneman, Inc.'s books and records, for costs of suit, attorneys' fees and for such other further relief as the Court may deem just and proper.

2.      On the Second Claim for Relief, for recovery under ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), for judgment against defendant Breneman, Inc. as follows:

(a) under Section 502(g)(2)(A) – for unpaid contributions (reported, not paid) in the principal amount of $38,257.12, according to proof at trial;

(b) under Section 502(g)(2)(B) – an award of interest on the unpaid fringe benefit contributions at the rate of 1.5% per month, from the date of delinquency, until the date of judgment, calculated to be $1,158.79 through March 24, 2016;

(c) under Section 502(g)(2)(C) – the additional award of an amount equal to the greater of (i) interest on the unpaid fringe benefit contributions at the rate of 1.5% per month, from the date of delinquency, until the date of judgment; or (ii) liquidated damages under the Master Agreement and trust agreements of $150 for each month that defendants failed to timely report and pay all employee fringe benefit contributions into each Trust Funds, calculated to be $1,158.79 through March 24, 2016;

(d) such other or further amounts as may be shown at trial, for costs of suit, attorneys' fees and for such other further relief as the Court may deem just and proper.

/ / /

3.    On the Third Claim for Relief, for damages for Breach of Contract/Payment Plan, for judgment against defendants Breneman, Inc. and James G. Breneman, and each of them, for unpaid contributions, liquidated damages and interest in the amount of $149,909.74, according to proof at trial; for interest in the amount of 10% per annum; and for such other further relief as the Court may deem just and proper.

4.    On the Fourth Claim for Relief, that defendant Breneman, Inc. be compelled to forthwith submit to an audit by an auditor selected by plaintiffs, which audit is to be conducted at the premises of defendant during business hours, at a reasonable time or times, and to allow said auditor to examine and copy such books, records, papers and reports of defendant Breneman, Inc. that are relevant to the enforcement of the collective bargaining agreement and trust agreements, including, but not limited to, the following for the period July 1, 2015 through the present:

> California Quarterly Report of Wages, Form DE-6; Federal Tax Forms W-3/W-2 and 1069/1099; Payroll Registers/Journals; Individual Earnings Records; Source Records, including time cards and time card summaries for all employees; contribution reports for all trust funds; workers' compensation reports; certified payroll reports; personnel records indicating job classifications and hire/termination dates; cash disbursement journal; vendor invoices; copies of subcontract agreements; cash receipts journal; general ledger; job cost records; records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation.

DATED:  March 30, 2016

BULLIVANT HOUSER BAILEY PC


By  */s/ Ronald L. Richman*
　　Ronald L. Richman

Attorneys for Plaintiffs

15622738.1

COMPLAINT FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT

# EXHIBIT A



**Laborers Funds Administrative Office of Northern California, Inc.**
220 Campus Lane, Fairfield, CA 94534-1498 • Telephone: (707) 864-2800

July 20, 2015

```
RECEIVED
JUL 30 2015
LAB/CM=LDC
```

Breneman Inc.
James Breneman
2000 Norris Road
Walnut Creek CA 94596

RE: Employer ID# 51089

Dear Mr. Breneman

This letter is to confirm a payment plan for your delinquent contributions for the months of _June 2014; September 2014 through November 2014; March 2015 through May 2015._  Currently, your company is delinquent in the amount of $206,936.33.  It is agreed that your company will begin a twelve (12) month payment plan to pay the delinquent balance in full.  Your payments will be as follows:

| Payment Date | Payment Amount | Balance | Comments |
|---|---|---|---|
| 8/20/15 | $17,245.00 | $189,691.33 | |
| 9/20/15 | $17,245.00 | $172,446.33 | |
| 10/20/15 | $17,245.00 | $155,201.33 | |
| 11/20/15 | $17,245.00 | $137,956.33 | |
| 12/20/15 | $17,245.00 | $120,711.33 | |
| 1/20/16 | $17,245.00 | $103,466.33 | |
| 2/20/16 | $17,245.00 | $ 86,221.33 | |
| 3/20/16 | $17,245.00 | $ 68,976.33 | |
| 4/20/16 | $17,245.00 | $ 51,731.33 | |
| 5/20/16 | $17,245.00 | $ 34,486.33 | |
| 6/20/15 | $17,245.00 | $ 17,241.33 | |
| 7/20/16 | $17,241.33 | $ 0.00 | |

Your Company agrees that it owes liquidated damages in the amount of $2,850.00 and interest in the amount of $36,914.72 based upon its failure to timely pay fringe benefit contributions to the Trust Funds for work performed by its employees during the months of June of 2012 to May of 2015. The aforementioned liquidated damages and interest are not payable under this Payment Plan.  These liquidated damages will be reviewed for a possible waiver of all or some portion of such liquidated damages and interest owed,  if and only if, every payment is timely made under the Payment Plan.  To the extent that any payment owed under the Payment Plan is not timely made, then the full amount of liquidated damages will be immediately due and payable without further notice.

1

Page 2
July 15, 2015
Breneman, Inc.

Your payment plan will remain in effect as long as future Contribution Reports are received and paid on time; commencing with your June 2015 Contributions, due no later than July 25, 2015. If any of the above conditions are not met, including, but not limited to, any payment due under the monthly payment plan not being timely paid, the monthly payment plan will become invalid and all contributions payable under this monthly payment plan will be due immediately without futher notice to you by the Trust Funds. We would then file civil action against your company to secure the benefits of your Laborers.

Please sign below and return to the Trust Fund Office **via fax at (707) 864-5856.** If you should have any questions, please give me a call. I can be reached at (707) 592-7844.

Sincerely,

Candace Holzapple
Field Collector

**Please sign to accept this payment plan** _____ Date 7/28/15



RECEIVED
JUL 3 0 2015
LAB/CM=LDC

2

# EXHIBIT B



RECEIVED

JUL 30 2015

LAB/CM=LDC

**To:**   Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California and Laborers Training and Retraining Trust Fund for Northern California ("Trust Funds")

**From:** James Gilbert Breneman (the "Guarantor")

### PERSONAL GUARANTEE AND UNDERTAKING

**IN CONSIDERATION** of the Trust Funds having at my request agreed to enter into a twelve month payment plan with the Trust Funds (hereinafter the "Payment Plan"), a copy of which is attached hereto, I, James Gilbert Breneman, do hereby in my personal capacity undertake and agree with you, Trust Funds, as follows:

1.     I, the Guarantor, do hereby guarantee Trust Funds and its successors and assigns, full, complete and due performance by BRENEMAN INC. of all the provisions, conditions, warranties, covenants and agreements contained therein the Payment Plan, a copy of which I have read and understood the contents therein.  I also do hereby guarantee payment of the liquidated damages in the amount of $2,850.00 and interest in the amount of $36,914.72 owed in relation to BRENEMAN INC.'s failure to timely pay fringe benefit contributions to the Trust Funds for work performed by its employees during the months of June of 2012 to May of 2015.

2.     This Guarantee shall extend to any obligations of BRENEMAN INC. under any amendment, present or future, to the Payment Plan, including, without limiting the generality of the foregoing, any amendment which has the effect of extending the Payment Plan where time is of essence.

3.     I acknowledge that the Payment Plan may be amended from time to time by the parties thereto without the prior consent of myself, and it is hereby agreed that no such amendment shall release me from my liability under this Guarantee either in whole or in part.

4.     My liability herein under this Guarantee and Undertaking shall continue despite the insolvency or winding-up of BRENEMAN INC. until such time BRENEMAN INC. shall

have fully performed all the provisions, conditions, warranties, covenants and agreements contained therein the said Agreement.

5.     If BRENEMAN INC. fails to perform any of its obligations under the said Payment Plan, or breaches any provision thereof, then I, the Guarantor, do hereby undertake and guarantee to perform the obligations of BRENEMAN INC. under the Payment Plan and will indemnify you, Trust Funds, against all losses, damages, costs and expenses which may be incurred and/or suffered by you together with all charges legal fees or disbursements incurred by you by reason of any default on the part of BRENEMAN INC. in performing or observing the agreements and provisions on its part contained in the said Payment Plan AND immediately upon your written demand, I shall pay to the Trust Funds the sum of $246,701.05 in United States Dollars less any payments made by BRENEMAN INC. to the Trust Funds under the Payment Plan.  I shall also pay to the Trust Funds interest on the amount due under this Guarantee and Undertaking at the rate of ten percent (10%) per annum calculated from the date of BRENEMAN INC.'s default under the Payment Plan until full payment thereof.

6.     You, Trust Funds, shall not be bound to exhaust your recourse against BRENEMAN INC. or other parties, nor realize any security granted to you by BRENEMAN INC. or any party, nor value any such security nor notify me, the Guarantor of any act of default on the part of BRENEMAN INC., before enforcing the provisions of this Guarantee against me.

7.     This Guarantee shall be in addition to and not in substitution for any other guarantees which you, Trust Funds, may now or hereafter hold in respect of the guaranteed obligations and you shall be under no obligation to marshall in favor of me, the Guarantor, any other guarantees or other securities or any monies or the assets which BRENEMAN INC. may be entitled to receive or may have a claim upon, and neither the loss nor unenforceability of any other guarantees or other securities which you may now or hereafter hold in respect of the guaranteed obligations, whether occasioned by default of BRENEMAN INC. or otherwise, shall in any way limit or lessen my liability.

8.     This Guarantee embodies all the agreements between the parties hereto relating to the Guarantee, and none of the parties shall be bound by any representation or promise made by any person relative thereto which is not embodied herein, and it is specifically agreed that you,

2

RECEIVED

JUL 3 0 2015

LAB/CM=LDC

EXHIBIT B
Page 2



RECEIVED

JUL 30 2015

LAR/CM=LDC

Trust Funds, shall not be bound by any representations or promises made by BRENEMAN INC. to me as the Guarantor.

9.     This Guarantee shall not be discharged nor otherwise affected by the death of me, the Guarantor and shall inure to the benefit of you, Trust Funds, its successors and assigns, and shall be binding upon me, the Guarantor, my heirs. Executors, administrators, successors, or assigns.

10.     This Guarantee shall be of a continuing nature and shall secure the guaranteed obligations that may be due from time to time and at any time from BRENEMAN INC. to you, notwithstanding that the guaranteed obligations may change from time to time or may at any time be amended or deleted.

11.     You, Trust Funds shall not be required to inquire into the powers of BRENEMAN INC. or any agents acting or purporting to act on its behalf, and any obligations to you incurred in the professed exercise of the rights and positions of BRENEMAN INC. under the Payment Plan shall be deemed to be part of the guaranteed obligations, even though the actions in so doing may be in excess of the powers of BRENEMAN INC. or of its professed agent or may be in any way irregular, defective or informal.

12.     (1) This Guarantee shall be absolute and non-conditional and shall be effective from the date hereof.

(2) This Guarantee and Undertaking shall be governed by and construed in all respects in accordance with the laws of the state of California, but in enforcing this guarantee and undertaking, you are at liberty to initiate and take action or proceedings or otherwise against me in California or elsewhere as you may deem fit, and I hereby agree that where any actions or proceedings are initiated and taken in the state of California, I shall submit to the jurisdiction of the courts in the state of California in all matters connected with my obligations and liabilities under or arising out of this Guarantee and Undertaking. Any writ, judgment or other notice of legal process shall be sufficiently served on me if delivered to or sent by ordinary or registered post to my address hereinabove stated.

13.     My liabilities herein as the Guarantor shall be irrevocable.

14.     All notice to me may be sent by registered or certified mail or by prepaid courier, addressed to my address set out hereinabove, or by delivering it by hand to me at the said address hereinabove, and any notice sent by mail or by courier shall be deemed to be served on me on the third business day following the mailing thereof.

15.     You shall be at liberty to proceed against me under this guarantee as though I am the principal, and I do hereby waive all and any of my rights as surety which may at any time be inconsistent with any of the provisions of this Guarantee.

16.     I shall unless otherwise instructed by you in writing, pay to you all monies and satisfy all liabilities hereunder in United States Dollars, inclusive of any judgment or order made or registered against BRENEMAN INC.  For the purpose of this clause, the rate of exchange means the rate at which you are able on or about the date of such payment to purchase, in accordance with your normal practice, the contractual currency with the payment currency and shall take into account (and I shall be liable for) any premium and other costs of exchange including any taxes or duties incurred by reason of any such exchange.

17.     If any of the provisions of this Guarantee and Undertaking becomes invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions of this Guarantee and undertaking shall not in any way be affected or impaired.

18.     I hereby acknowledge that I have read and understood the contents of this Guarantee and Undertaking and I further warrant that I have sought independent legal advice in relation to this Guarantee and Undertaking AND I fully understand the legal implications and consequences of the same.

Dated:
7/30/15

Signature of Trust Funds

RECEIVED
JUL 30 2015
LAB/CM=LDC

4

Dated: 7/28/15

Signature of Guarantor JAMES GILBERT BRENEMAN, Individually

Subscribed and sworn to before me this

_____day of 20_____

_____NOTARY PUBLIC



5

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**RECEIVED**

JUL 30 2015

**LAB/CM=LDC**

STATE OF   California
COUNTY OF   Contra Costa                )SS

On   7/28/15                before me,   **H. Hills**, Notary Public   , Notary Public, personally appeared
James   Breneman

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

**H. HILLS**
COMM. #1948020
Notary Public · California
Contra Costa County
Comm. Expires Aug 13, 2015

This area for official notarial seal.

---

### OPTIONAL SECTION - NOT PART OF NOTARY ACKNOWLEDGEMENT
### CAPACITY CLAIMED BY SIGNER

Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the documents.

☐ INDIVIDUAL
☐ CORPORATE OFFICER(S)   TITLE(S)
☐ PARTNER(S)   ☐ LIMITED   ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER
SIGNER IS REPRESENTING:

Name of Person or Entity                    Name of Person or Entity

---

### OPTIONAL SECTION - NOT PART OF NOTARY ACKNOWLEDGEMENT
Though the data requested here is not required by law, it could prevent fraudulent reattachment of this form.

### THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED BELOW

TITLE OR TYPE OF DOCUMENT: _____

NUMBER OF PAGES _____   DATE OF DOCUMENT _____

SIGNER(S) OTHER THAN NAMED ABOVE _____

EXHIBIT B
Page 6

<table>
<tr><td>A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.</td><td>CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT</td></tr>
</table>

State of California ................................)

County of __Solano_____ )

On __7/30/15_____ before me, _Jennifer Peters, Notary Public_,
                                              (here insert name and title of the officer)

personally appeared ___Michelle Lauziere_____

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

**JENNIFER PETERS**
COMM. #2089469
Notary Public · California
Solano County
My Comm. Expires Nov. 9, 2018

(Seal)

──────────── OPTIONAL INFORMATION ────────────

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

**Description of Attached Document**

The preceding Certificate of Acknowledgment is attached to a document

titled/for the purpose of _Personal Guarantee_

___and Undertaking_____

containing __5__ pages, and dated __7/30/15__.

The signer(s) capacity or authority is/are as:
☒ Individual(s)
☐ Attorney-in-Fact
☐ Corporate Officer(s) _____
                                                    Title(s)

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____
                    Name(s) of Person(s) or Entity(ies) Signer is Representing

**Additional Information**

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
└ ○ form(s) of identification  ○ credible witness(es)

Notarial event is detailed in notary journal on:
          Page #_____  Entry #_____

Notary contact:_____

Other
☐ Additional Signer(s)  ☐ Signer(s) Thumbprint(s)
☐ _____

© Copyright 2007-2014 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.